IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MICHAEL A. WARTELL )
)
Plaintiff, )
)
-vs- )   CIVIL NO: 1:13-CV- 99 RLM
)
PURDUE UNIVERSITY, )
ALYSA ROLLOCK, MICHAEL )
BERGHOFF, JOANN BROUILLETTE, )
MICHAEL J. BIRCK, JOHN D. )
HARDIN, JR., KEITH J. KRACH, )
GARY J. LEHMAN, MIRANDA )
McCORMACK, THOMAS SPURGEON, )
DONALD THOMPSON and )
BRUCE WHITE )
)
Defendants. )

## COMPLAINT

Comes now the plaintiff, Michael A. Wartell ("Wartell"), by counsel, and for his

Complaint against defendants, Purdue University ("Purdue"), Alysa Rollock

("Rollock"), Michael Berghoff, JoAnn Brouillette, Michael J. Birck, John D. Hardin, Jr.,

Keith J. Krach, Gary L. Lehman, Miranda McCormack, Thomas Spurgeon, Donald

Thompson and Bruce White, alleges and says as follows:

### I. PARTIES AND JURISDICTION

1.      Wartell is a male citizen of the State of Indiana residing in Fort Wayne,

Indiana.

2. Purdue is a school of higher education with a principal place of business in West Lafayette, Indiana.

3. Rollock is employed as the Vice President of Ethics and Compliance of Purdue.

4. Michael Berghoff, JoAnn Brouillette, Michael J. Birck, John D. Hardin, Jr., Keith J. Krach, Gary L. Lehman, Miranda McCormack, Thomas Spurgeon, Donald Thompson and Bruce White are members of the Board of Trustees of Purdue (hereinafter "Trustees").

5. Rollock and Trustees are named in this Complaint in their individual capacities.

6. This Court has jurisdiction over this action pursuant to the provisions of 28. U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367, this being a suit authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and under Section I of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under Indiana common law.

7. Venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391(b), this being the judicial district in which one or more of the defendants reside and the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## II. FACTS COMMON TO ALL CLAIMS

8. Wartell realleges and incorporates herein by reference the same as set forth in full the allegations contained in Paragraphs 1 through 7 of his Complaint.

9.  At all relevant times, Wartell was employed by Purdue as Chancellor of Indiana University-Purdue University Fort Wayne ("IPFW").

10.  During his nearly nineteen year stint as IPFW's Chancellor, and as a public employee, Wartell had a property interest in his continued employment.

11.  Wartell's immediate supervisor was the president of Purdue University. At all times relevant to this Complaint, Purdue's President was France Cordova ("Cordova"), a female.

12.  In late 2010 or early 2011, Cordova announced at a meeting that before her term as President was over that she wanted to increase the number of females in the Purdue administration.

13.  Cordova specifically pointed to a picture of Wartell on a board and said "I am going to replace this one with a woman."

14.  On or about May 19, 2011, Cordova called Wartell and informed him that Purdue decided that Wartell would retire on June 30, 2012, in accordance with Purdue's mandatory retirement policy.

15.  Purdue's retirement policy states that:

**University Executives and Staff in High Policymaking Positions** shall retire by the end of the fiscal year in which the age of sixty-five is attained if (1) the employee has been employed in such capacity for the two year period immediately before retirement; and (2) the employee is entitled to the **minimum retirement benefits specified by federal law** for persons who hold positions to which mandatory retirements may lawfully apply.

**University Executives and Staff in High Policymaking Positions** who also hold a tenure faculty appointment in addition to their administrative appointment have the right to return to the faculty upon retirement of administrative office.  Upon returning to the faculty, the salary of the

3

faculty member will be adjusted by the Salary of Academic Administrative Officers Returning to the Faculty Policy.

(original emphasis).

16.     Wartell learned on or about May 26, 2011, however, that the Trustees had not yet discussed whether it would force Wartell's retirement and would not discuss the topic until the Board's July 2011 meeting.

17.     On or about July 1, 2011, Cordova knew she was leaving Purdue.

18.     On or about July 12, 2011, the chairman of the Purdue Board of Trustees, Keith Krach ("Krach"), told Wartell that the Board had decided that Cordova's recommendation would be accepted and that Cordova recommended against Wartell's continuation as Chancellor of IPFW.  Krach also told Wartell that Wartell's continuation as Chancellor of IPFW was Cordova's decision.

19.     Since Krach indicated that Wartell's continuation as Chancellor of IPFW was up to Cordova, Wartell immediately sent a correspondence to Cordova requesting an extension to the mandatory retirement date.  A true and accurate copy copy of Wartell's correspondence requesting continuation as Chancellor is attached hereto, made a part hereof, and marked as Exhibit "**A**".

20.     On or about July 15, 2011, Cordova denied Wartell's request for an extension of the mandatory retirement date.

21.     Purdue's past practice has been to grant extensions to the retirement policy to all officials who requested them, including past Chancellor's.

4

22.     Wartell is the only Purdue official subject to the mandatory retirement policy whose request for an extension of the mandatory retirement date had ever been rejected by Purdue.

23.     Cordova's rejection of Wartell's request for an extension of the mandatory retirement date was not based upon Wartell's credentials or job performance. Indeed, Purdue has admitted that Wartell's removal as Chancellor of IPFW had no relation to the performance of his duties as Chancellor.

24.     Cordova denied Wartell's request for an extension of the mandatory retirement age on the basis of his gender, as Wartell is a male, and Cordova wanted a female chancellor at IPFW.

25.     As an employee of Purdue, Wartell filed a formal complaint alleging harassment and discrimination against Cordova pursuant to Purdue's internal complaint process.

26.     Purdue's procedures for resolving complaints of discrimination and harassment require such complaints be investigated by a neutral investigator. A true and accurate copy of Purdue's Discrimination and Harassment Policy is attached hereto, made a part hereof, and marked as Exhibit "B".

27.     Because Wartell filed his Complaint against Cordova, Purdue's President, Purdue requested that Wartell agree to an alternative process to investigate his complaint of discrimination.

28. The alternative process detailed by Purdue also required the appointment of a neutral and independent investigator to conduct a thorough investigation of Wartell's complaint of discrimination.

29. Purdue's Proposed Alternative Investigation Procedures were put in writing on or about September 20, 2011. A true and accurate copy of the Proposed Alternative Investigation Procedures is attached hereto, made a part hereof, and marked as Exhibit "C".

30. On or about September 28, 2011, Wartell responded to Purdue's proposed investigation procedures and requested modifications. The requested modifications did not impact the neutral and independent investigator requirement. A true and accurate copy of Wartell's September 28, 2011 correspondence is attached hereto, made a part hereof, and marked as Exhibit "D".

31. On or about September 29, 2011, Purdue acknowledged Wartell's modifications to the investigation procedures, accepted Wartell's proposed modifications, and indicated it would proceed with the investigation as detailed in the September 20, 2011 correspondence. A true and accurate copy of Purdue's acknowledgment is attached hereto, made a part hereof, and marked as Exhibit "E".

32. Rollock, acting on behalf of Purdue, appointed John C. Trimble ("Trimble") as the person to conduct the investigation of Wartell's discrimination complaint.

33. During the course of Trimble's investigation of Wartell's discrimination complaint, Rollock told Wartell and others that information contained in Trimble's report would be subject to disclosure under federal and state public records laws.

34. With the express understanding that Trimble had been hired as the agreed-upon independent investigator, Wartell spoke with Trimble as a part of the investigation of his discrimination complaint.

35. Throughout the investigation process, Purdue, Rollock and Trimble, through their acts and omissions, lead Wartell to believe that Trimble was an independent third-party neutral investigator.

36. At all times during the course of the investigation, Wartell believed that Trimble was the independent third-party neutral investigator that Purdue and Rollock had promised.

37. On February 14, 2012, Purdue's Board of Trustees denied Wartell's internal complaint of discrimination.

38. On or about March 27, 2012, Wartell made an Access to Public Records Act ("APRA") request to Purdue's public records office for any reports or documents prepared by Trimble regarding Wartell's complaint of discrimination.

39. On or about April 4, 2012, Purdue denied Wartell's APRA request, claiming that the records were the work product of an attorney representing a public agency, i.e. Purdue.

40. Wartell had no knowledge until after Trimble's investigation was completed and Wartell requested a copy of Trimble's report, that Rollock and Purdue

had engaged Trimble as Purdue's attorney and that Trimble was not a third-party neutral, as promised by Purdue.

41.    At no time did Wartell agree that the investigator would or could be Purdue's attorney, and Wartell would not have agreed to the Alternative Process or spoken with Trimble had he known Purdue engaged Trimble as its attorney and not the promised independent investigator.

42.    To date, Purdue has not investigated Wartell's complaint pursuant to the parties' agreed alternative procedures.

43.    On April 27, 2012, Wartell filed a Charge of Discrimination with the Equal Employment Opportunity Commission, detailing Purdue's gender-based discrimination.  A true and accurate copy of the Charge is attached hereto, made a part hereof, and marked as Exhibit "F".

44.    On or about June 30, 2012, Wartell was demoted from the position as Chancellor of IPFW to the position of IPFW Chancellor Emeritus.

45.    Cordova and Purdue demoted Wartell because he is male, and Cordova wanted a female chancellor at IPFW.

46.    Purdue replaced Wartell as chancellor of IPFW by giving a 64 year old female Chancellor, an indefinite employment contract.

47.    On September 14, 2012, Wartell filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission, amending the April 27, 2012 Charge and, again, detailing Purdue's gender-based discrimination.  A

true and accurate copy of the Amended Charge is attached hereto, made a part hereof, and marked as Exhibit "G".

48.     On September 18, 2012, Wartell filed a Second Charge of Discrimination with the Equal Employment Opportunity Commission, based on Wartell's demotion from IPFW Chancellor to IPFW Chancellor Emeritus.  A true and accurate copy of the Second Charge is attached hereto, made a part hereof, and marked as Exhibit "H"[1].

49.     On January 31, 2013, the United States Equal Opportunity Commission issued its Dismissal and Notice of Rights to Wartell.  A true and accurate copy of this Notice is attached hereto, made a part hereof, and marked as Exhibit "I".

## COUNT I

Comes now the plaintiff, Michael A. Wartell, by counsel, and for his first cause of action against defendant, Purdue University, alleges and says as follows:

50.     Wartell incorporates herein by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 49 of his Complaint.

51.     The action of Purdue in removing Wartell from his position as Chancellor of IPFW on the basis of his gender is in violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e – 2(a)(1).

52.     Due to Purdue's discriminatory treatment of Wartell, as described in the preceding paragraphs, Wartell has retained the undersigned attorneys to prosecute this action, and is obligated to pay said attorneys a reasonable fee for their services.

---

[1] The EEOC, feeling that the discrimination alleged in the Second Charge was the same as that alleged in the first Charge and Amended Charge, investigated all three charges under the same EEOC Charge No., No. 470-2012-02010.

WHEREFORE, plaintiff, Michael A. Wartell, prays that the Court enter judgment in his favor and against the defendant, Purdue University; that the Court enter an Order declaring that the discriminatory practices identified above to be in violation of Title VII in that such practices discriminate against Wartell on the basis of his sex; that the Court enter an Order enjoining Purdue from discriminating against Wartell on the basis of his sex; that the Court award Wartell re-instatement to his former position as Chancellor of IPFW with full back pay and other benefits from the date of his removal of that position; that the Court award Wartell reasonable attorneys' fees and the costs of this action; and that the Court award Wartell whatever additional relief it deems just and equitable.

## COUNT II

Comes now the Plaintiff, Michael A. Wartell, by counsel, and for his second cause of action against defendants, Alysa Rollock, Michael Berghoff, JoAnn Brouillette, Michael J. Birck, John D. Hardin, Jr., Keith J. Krach, Gary L. Lehman, Miranda McCormack, Thomas Spurgeon, Donald Thompson and Bruce White, alleges and says as follows:

53.     Wartell incorporates by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 52 of his Complaint.

54.     Wartell had a property interest under Indiana law in his continued employment as Chancellor of IPFW.

55.     The actions of Rollock and the Trustees in misrepresenting to Wartell that Purdue was going to engage a neutral and independent investigator in order to

persuade Wartell to give up his right to proceed under Purdue's internal complaint process denied Wartell his right to a fundamentally fair proceeding under the Due Process Clause of the 14th Amendment to the United States Constitution.

56.   In addition, the failure of Rollock and the Trustees to appoint an independent investigator, as agreed to with Wartell, deprived Wartell of his right to an unbiased decision maker of his internal complaint for discrimination as guaranteed by the Due Process Clause of the 14th Amendment of the United States Constitution.

57.   Rollock and the Trustees knew, or reasonably should have known, that by failing to engage a neutral and independent third-party investigator to investigate Wartell's internal claim of discrimination, and instead engaging an attorney who was representing the interests of Purdue, Purdue violated Wartell's rights under the Due Process Clause of the 14th Amendment of the United States Constitution.

58.   Rollock and the Trustees acted maliciously, willfully, and in wanton and reckless disregard of Wartell's constitutional rights when they took the above-referenced action, in violation of Wartell's civil rights, as provided in 42 U.S.C. § 1983.

WHEREFORE, plaintiff, Michael A. Wartell, prays that the Court enter judgment in his favor and against the defendants; Alysa Rollock, Michael Berghoff, JoAnn Brouillette, Michael J. Birck, John D. Hardin, Jr., Keith J. Krach, Gary L. Lehman, Miranda McCormack, Thomas Spurgeon, Donald Thompson and Bruce White; that the Court declare that Rollock and the Trustees, in failing to engage a neutral and independent investigator for Wartell's charge of discrimination and instead engaging an attorney to represent the interests of Purdue, violated Wartell's rights under the Due

11

Process Clause of the 14th Amendment of the United States Constitution and constituted a violation of Wartell's civil rights as provided in 42 U.S.C. § 1983; Order that the Trustees reinstate Wartell to the position of Chancellor of IPFW from which Wartell was demoted in violation of his rights and the statutes asserted above; award Wartell back pay and other benefits for the period from the date of his removal as Chancellor of IPFW until the date of his reinstatement, including pre-judgment interest, less any pay received by Wartell from Purdue during the period in question; award to Wartell the reasonable attorneys' fees and costs incurred in pursuing this action, and for all other just and proper relief.

## COUNT III

Comes now the Plaintiff, Michael A. Wartell, by counsel, and for his third cause of action against defendant, Purdue University, alleges and says as follows:

59.     Wartell incorporates by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 58 of his Complaint.

60.     Wartell and Purdue entered into an agreement whereby Purdue was to appoint a neutral and independent investigator to investigate Wartell's claim of discrimination against Cordova.

61.     Purdue breached the terms of its agreement with Wartell by, instead of appointing a neutral and independent investigator, appointing an attorney who was engaged to represent the interests of Purdue.

62.     As a result of the breach of the agreement by Purdue, Wartell has sustained damage.

12

WHEREFORE, plaintiff, Michael A. Wartell, prays that the Court enter judgment in his favor and against the defendant, Purdue University; that the Court award damages to Wartell in an amount sufficient to compensate Wartell for Purdue's breach of contract; for the cost of this action; and for all other just and proper relief.

## COUNT IV

Comes now the Plaintiff, Michael A. Wartell, by counsel, and for his fourth cause of action against defendant, Purdue University, alleges and says as follows:

63.   Wartell incorporates by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 62 of his Complaint.

64.   As a public employee, Wartell had a property interest in his continued employment as Chancellor at IPFW.

65.   Specifically, Wartell was contractually entitled to continue as Chancellor indefinitely until properly terminated pursuant to applicable law and Purdue's employment policies and procedures.

66.   Purdue breached the terms of its contract with Wartell when it demoted him without cause on June 30, 2012.

67.   When it demoted Wartell, Purdue cited to the retirement policy and claims that the Retirement Policy provides it with a legitimate, non-discriminatory, basis for demoting Wartell.

68.   However, Purdue's use of the retirement policy is a pretext for its gender-based discrimination against Wartell because (a) Purdue replaced 65-year old Wartell with a 64-year old female Chancellor; and (b) Purdue denied Wartell's request for an

13

exception to the retirement policy, despite Purdue's past practice to grant exceptions to the retirement policy to all officials who requested them, including past Chancellors.

69.   Accordingly, Purdue breached the terms of its contract with Wartell by failing to demote/terminate him in accordance with applicable law and Purdue's employment policies and procedures.

70.   As a result of Purdue's breach of contract, Wartell has sustained damages.

WHEREFORE, plaintiff, Michael A. Wartell, prays that the Court enter judgment in his favor and against the defendant, Purdue University; that the Court award damages to Wartell in an amount sufficient to compensate Wartell for Purdue's breach of contract; for the cost of this action; and for all other just and proper relief.

## JURY DEMAND

Plaintiff, Michael A. Wartell, by counsel, demands that the issues raised in his Complaint be tried to a jury.

Respectfully submitted

CARSON BOXBERGER LLP


By _____
        J.  Blake Hike (28601-02)
        Larry L. Barnard (11904-49)
        Mark D. Ulmschneider (923-02)
        Attorneys for Plaintiff

301 W. Jefferson Blvd., Suite 100
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9411
hike@carsonboxberger.com
barnard@carsonboxberger.com
ulmschneider@carsonboxberger.com
F:\W\Wartell, Chancellor Mike\Purdue University - EEOC\Pleadings\Complaint.docx

14

exception to the retirement policy, despite Purdue's past practice to grant exceptions to the retirement policy to all officials who requested them, including past Chancellors.

69.     Accordingly, Purdue breached the terms of its contract with Wartell by failing to demote/terminate him in accordance with applicable law and Purdue's employment policies and procedures.

70.     As a result of Purdue's breach of contract, Wartell has sustained damages.

WHEREFORE, plaintiff, Michael A. Wartell, prays that the Court enter judgment in his favor and against the defendant, Purdue University; that the Court award damages to Wartell in an amount sufficient to compensate Wartell for Purdue's breach of contract; for the cost of this action; and for all other just and proper relief.

## JURY DEMAND

Plaintiff, Michael A. Wartell, by counsel, demands that the issues raised in his Complaint be tried to a jury.

Respectfully submitted

CARSON BOXBERGER LLP

By _____
J. Blake Hike (28601-02)
Larry L. Barnard (11904-49)
Mark D. Ulmschneider (923-02)
Attorneys for Plaintiff

301 W. Jefferson Blvd., Suite 100
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9411
hike@carsonboxberger.com
barnard@carsonboxberger.com
ulmschneider@carsonboxberger.com
F:\W\Wartell, Chancellor Mike\Purdue University - EEOC\Pleadings\Complaint.docx

14



## OFFICE OF THE CHANCELLOR

TO:   France Córdova
      President

FROM: Michael Wartell
      Chancellor

DATE:  7/12/2011

RE:   Mandatory Retirement

Chairman Krach of the Purdue Board of Trustees has informed me that the decision to enforce my retirement at age 65 rests in the President's Office.  Therefore, I am asking you to reconsider your original decision.



Indiana University–Purdue University Fort Wayne ▾ 2101 East Coliseum Boulevard ▾ Fort Wayne, Indiana 46805-1499
p: 260-481-6103 ▾ www.ipfw.edu ▾ IPFW is an Equal Opportunity/Equal Access University.



FOSTERING HONESTY TRUST
RESPECT
ACCOUNTABILITY INTEGRITY FAIRNESS
VALUES CREATING
COMMUNITY

EQUAL ACCESS AND EQUAL OPPORTUNITY
AT PURDUE UNIVERSITY



EXHIBIT

B



# PROCEDURES FOR RESOLVING COMPLAINTS OF DISCRIMINATION AND HARASSMENT

Date Last Revised: February 27, 2012

## I. INTRODUCTION

Purdue University is committed to maintaining an environment that recognizes the inherent worth and dignity of every person, fosters tolerance, sensitivity, understanding and mutual respect, and encourages its members to strive to reach their potential.

Any employee, student, campus visitor or person participating in a University activity, whether on or off campus, who believes he or she has experienced or witnessed discrimination and/or harassment is encouraged to report the incident(s) promptly. Prompt reporting of complaints is vital to the University's ability to resolve the matter.

There are both informal and formal processes for resolving complaints of discrimination and harassment. A Complainant may elect to invoke either the informal or formal resolution process. If the Complainant finds that initial informal efforts are unsatisfactory, the Complainant may then seek formal resolution. In certain situations, the Complainant also has a right to file a criminal complaint with local law enforcement and may do so either during or after the University's investigation of the alleged harassment.

The University reserves the right to investigate circumstances that may involve discrimination and/or harassment where no complaint, formal or informal, has been filed. In such situations, the University may elect to investigate and, if warranted, impose disciplinary sanctions pursuant to these or other established University procedures.

In the event that circumstances involve potential criminal conduct, the University will determine whether it is necessary to notify law enforcement and/or other authorities. If a criminal investigation and/or a criminal proceeding are commenced, the University will continue to conduct its own investigation and will still take immediate and prompt steps that it deems necessary to protect the University community.

The University also reserves the right to take provisional, emergency actions departing from these Procedures, including but not limited to any and all necessary and immediate steps to protect the Complainant. Such actions may include taking interim steps before the determination of the final outcome of an investigation; provided, however, that such actions shall be followed as promptly as possible by steps giving Respondents the notice and opportunity to respond as specified in the Formal Resolution Process set forth in Section VI hereof.

Any question of interpretation regarding these Procedures shall be referred to the Vice President for Ethics and Compliance for final determination.

## II. DEFINITIONS

### Advisory Committee on Equity

The committee appointed by the Vice President for Ethics and Compliance upon the nomination of the Provost, a Chancellor, the University Senate, the Administrative and Professional Staff Advisory Committee and the Clerical/ Service Staff Advisory Committee to advise the Chancellors and the Director pursuant to Section VI of these Procedures.

### Complainant(s)

A person or persons making a complaint under the Informal Resolution Process or the Formal Resolution Process.

### Contact Person

A Complainant's department head or any other person who has supervisory responsibility for the Complainant or a designated individual within the following University offices: (a) on the West Lafayette campus, the Office of Institutional Equity, Office of the Vice President for Human Resources, Graduate School and Office of the Dean of Students; (b) on the Calumet campus, the Office of Equity and Diversity, Office of the Dean of Students and Department of Human Resources; (c) on the Fort Wayne campus, the Office of

Institutional Equity, Office of the Dean of Students and Department of Human Resources; and (d) on the North Central campus, the Equal Opportunity/ Affirmative Action Office, Dean of Students Office and Human Resources.

## Days

Calendar days.

## Director

The Director of Institutional Equity of the West Lafayette campus.

## Formal Complaint

A written complaint filed pursuant to Section VI of these Procedures.

## Formal Resolution Process

The process for resolving complaints of discrimination and/or harassment set forth in Section VI of these Procedures.

## Informal Complaint

A complaint made pursuant to Section V of these Procedures.

## Informal Resolution Process

The process for resolving complaints of discrimination and/or harassment set forth in Section V of these Procedures.

## Procedures

The procedures set forth in this document.

## Regulations Governing Student Conduct

The rules and procedures that govern student conduct and disciplinary action as set forth by each campus.

## Respondent(s)

The person or persons whose conduct is the subject of concern under these Procedures.

## University

Any campus, unit, program, association or entity of Purdue University, including but not limited to Indiana University-Purdue University Fort Wayne, Purdue University Calumet, Purdue University North Central, Purdue University West Lafayette, Purdue Cooperative Extension Service and Purdue University College of Technology Statewide.

## University Investigator

A person designated by the Vice President for Ethics and Compliance to investigate a Formal Complaint pursuant to Section VI of these Procedures.

## III. GENERAL PROVISIONS

These Procedures apply to all complaints of discrimination and/or harassment, whether the parties are students, recognized student organizations, employees, campus visitors or persons participating in a University activity. Employees who are students involved in activities subject to these Procedures may be treated either as students, employees or both at the sole option of the University.

To protect both the Complainant and the Respondent, complaints of discrimination and/or harassment will be treated with the greatest degree of confidentiality possible. Complainants are advised, however, that confidentiality can only be respected insofar as it does not interfere with the University's obligation to investigate allegations of misconduct that require it to take corrective action.

If necessary, the University will assist the Complainant in making reasonable efforts to avoid contact with the Respondent(s) by adjusting the Complainant's workplace or academic arrangements and/or, in the case of a student, campus living arrangements.

A Complainant may have an advisor or support person present when reporting discrimination and/or harassment or at any point in these Procedures. A Respondent may also have an advisor or support person present if and when he or she becomes a party to an Informal Resolution Process or a Formal Resolution Process. An advisor or support person may not however, stand in place of either the Complainant or the Respondent, act as legal counsel for a party or otherwise participate in the Informal Resolution Process or the Formal Resolution Process. An advisor or support person may, however, be an attorney.

All employees and students have an obligation to cooperate in the conduct of these Procedures. Failure to do so may result in disciplinary action. In the event that a Complainant does not cooperate by failing to furnish information requested by the University Investigator or to make himself or herself available for interview by the University Investigator, the Chancellor or Director may dismiss the Complaint. The Chancellor or Director shall provide written notice of such dismissal to the Complainant(s) and the Respondent(s). In the event that a Respondent does not cooperate by failing to furnish information requested by the University Investigator or to make himself or herself available for interview by the University Investigator, the University Investigator may conclude that such information or interview, if provided or conducted, would be adverse to the Respondent.

When extenuating circumstances warrant, a Chancellor or the Director, as the case may be, has the authority to extend any of the time limits contained in these Procedures except those relating to the filing of complaints or the filing of appeals.

In the event that a complaint concerns the conduct of the Director, the Vice President for Ethics and Compliance shall designate an individual who shall be responsible for implementing the responsibilities of the Director pursuant to these Procedures. In the event that a complaint concerns the conduct of the Vice President for Ethics and Compliance or a Chancellor, the President shall designate an individual who shall be responsible for implementing the responsibilities of the Vice President for Ethics and Compliance or such Chancellor pursuant to these Procedures. In the event that a complaint concerns the President, the Chairman of the Board of Trustees shall be responsible for implementing the responsibilities of the President pursuant to these Procedures.

Notwithstanding any provision contained in these Procedures to the contrary and in accordance with the Equal Opportunity, Equal Access and Affirmative Action (III.C.2) policy, a complaint alleging discrimination on the basis of marital status, parental status, sexual orientation, gender identity or gender expression will be barred unless a formal complaint is filed in accordance with these Procedures within 120 days of the alleged occurrence.

## IV. RESOURCES FOR RESOLVING COMPLAINTS OF DISCRIMINATION AND HARASSMENT

Inquiries and complaints about discrimination and/or harassment may be brought to a Contact Person. The management of all complaints of discrimination and/or harassment, regardless of where they are initially received, and the implementation of these Procedures is the responsibility of the Vice President for Ethics and Compliance.

# V. INFORMAL RESOLUTION PROCESS

Persons who believe they have experienced or witnessed discrimination or harassment are encouraged to report the incident promptly to a Contact Person. To file an Informal Complaint, a Complainant must (1) notify a Contact Person within 120 days of the incident of discrimination or harassment or, where the discrimination or harassment is of an ongoing nature, within 120 days from the most recent incident and (2) sign a completed Complaint Information Form.

Contact Persons will take steps to ensure confidentiality of the Complainant and Respondent during the Informal Resolution Process to the extent maintenance of confidentiality does not interfere with the University's obligation to address allegations of discrimination and/or harassment.

Any member of the University community may consult a Contact Person for advice, without obligation to file a complaint. If the potential Complainant declines to participate in the completion of the Complaint Information Form, however, the Contact Person may have no obligation to invoke the Informal Resolution Process or otherwise process the Informal Complaint.

## A. Processing of Informal Complaints

Within three days following its receipt by a Contact Person, the Contact Person must (1) forward a copy of the signed Complaint Information Form to the Office of the Vice President for Ethics and Compliance or, in the event that the matter involves persons from a Regional Campus, the Chancellor, and (2) either attempt to resolve the Informal Complaint or refer the matter for resolution to another Contact Person.

Prior to completing the Informal Resolution Process, and upon the Complainant's request, a Chancellor or the Director may determine that no useful purpose is served by pursuing the Informal Resolution Process and may move the dispute to the Formal Resolution Process. In such situations, the Contact Person shall complete and submit his or her Status Report Form as described below.

## B. Conclusion of the Informal Resolution Process

The Informal Resolution Process is designed to empower the parties to an Informal Complaint to reach a mutually satisfactory agreement. The Informal Resolution Process will be concluded by one of the following: (1) a decision to stop further action on the Informal Complaint, (2) a resolution of the Informal

Complaint by agreement of the parties or (3) initiation of the Formal Resolution Process. Possible resolutions by agreement of the parties may include, but are not limited to: an apology to the Complainant, assisting the Respondent to better understand the effects of his or her conduct and ways in which this behavior could be changed, participation in educational programs about equal opportunity or harassment, verbal or written reprimands, or other interventions or actions aimed at ending the misconduct. The Contact Person will attempt to conclude the Informal Resolution Process within 30 days.

Within 10 days following conclusion of the Informal Resolution Process, the Contact Person must complete and submit a Status Report Form. A copy of the Status Report Form is to be submitted to the Vice President for Ethics and Compliance or Chancellor, but not normally to any other campus-level office.

In the event the Informal Resolution Process demonstrates that the Complainant filed knowingly false or malicious charges, appropriate discipline will result.

## VI. FORMAL RESOLUTION PROCESS

Upon the election of a Complainant, or if there is no mutually acceptable resolution of an Informal Complaint during the Informal Resolution Process, a Formal Complaint of discrimination and/or harassment may be filed. To be considered properly received, a Formal Complaint must be filed with the appropriate Chancellor or the Director by the Complainant within the earlier of 10 days of the conclusion of the Informal Process or 120 days following the incident of discrimination and/or harassment. Where the discrimination and/or harassment is of an ongoing nature, a Formal Complaint must be filed within the earlier of 10 days of the conclusion of the informal process or 120 days from the most recent incident. The Formal Complaint must be signed and dated by the Complainant and describe the alleged incident(s) with the relevant date(s), name(s) of the Respondent(s) and name(s) of witness(es). Notwithstanding the foregoing, a Complaint relating to alleged discrimination or harassment occurring during a Complainant's employment by the University must be properly filed within 10 days following termination of the Complainant's employment with the University.

Within 10 days following receipt of a Formal Complaint, the Chancellor or Director will assign a University Investigator to investigate the Formal Complaint. Persons eligible to serve as University Investigators shall be designated by the Vice President for Ethics and Compliance.

## A. Notification of Formal Complaint and Response

Prompt notification of a Formal Complaint will be provided by the Chancellor or Director to the Respondent(s), to the department head or supervisor and to the appropriate Vice President, Dean or head of other major unit by delivery of a copy of the Formal Complaint through certified or express mail or by hand delivery. In the event the Respondent is a student or recognized student organization, the Dean of Students is the appropriate Dean. The notification to the Respondent(s) will include a copy of the Formal Complaint, the identity of the Complainant(s), a copy of any relevant University policy and these Procedures.

The Respondent(s) will be requested to respond in writing to the Formal Complaint within a reasonable time, not to exceed 10 days from the date of certified or express mailing or hand delivery of the notification of the Formal Complaint. Any extension of time must be approved by the Chancellor or Director. A copy of the Respondent(s)'s response will be provided to the Complainant.

## B. Investigation of Formal Complaints

As soon as practicable following appointment, the University Investigator will interview the Complainant(s). Within three days following the completion of his or her interview with the Complainant(s), the University Investigator will notify the Chancellor or Director in writing as to whether or not the allegations set forth in the Complaint, if substantiated, would constitute a violation of University policy. If the University Investigator's notification indicates that such allegations, if substantiated, would not constitute a violation of University policy, the Chancellor or Director may dismiss the Complaint, and that decision shall be final. The Chancellor or Director shall provide the Complainant(s) and Respondent(s) with written notice of such dismissal.

In the event that the University Investigator's notification indicates that the allegations set forth in the Complaint, if substantiated, would constitute a violation of University policy, or if the Chancellor or Director determines that the matter should be investigated, the University Investigator will conduct a thorough fact-finding investigation and will meet separately with both the Complainant(s) and the Respondent(s), interview pertinent witnesses and review relevant documents regarding the Formal Complaint. The investigation shall be completed within 30 days following the assignment of the Formal Complaint to the University Investigator, unless an extension of time is approved by the Chancellor or Director.

Within seven days following the conclusion of the investigation, the University Investigator will prepare and deliver a report to the Chancellor or Director. The report will include a finding based upon a preponderance of the evidence that (1) the allegations cannot be substantiated, (2) some or all of the allegations are substantiated or (3) the Formal Complaint was knowingly false or malicious. No violation of University policy will be presumed unless a preponderance of the evidence standard supports the finding of a violation. This preponderance of the evidence standard requires that the evidence supporting each finding is more convincing than the evidence offered in opposition to it. The report will include the basis upon which the University Investigator reached his or her conclusions. The report will also include the University Investigator's determination of whether a violation of any University policy has occurred and a recommendation of the sanctions to be imposed, if any.

## C. Determination

Within 15 days of receipt of the University Investigator's report, the Chancellor or Director will convene a meeting with and seek advice from a three-member panel selected by the Chancellor or Director from the Advisory Committee on Equity consisting of at least one participant who is a member of the faculty and one participant who is not a member of the faculty. At least two members of the panel shall be representatives of the campus from which the Formal Complaint originated. Prior to the meeting, members of the panel shall be furnished with a copy of the University Investigator's report and copies of any complaint or response of the parties. At the meeting, the panel will be afforded the opportunity to ask questions of the University Investigator. Upon request, the Complainant and the Respondent will be afforded an opportunity to meet with the Chancellor or Director and the panel.

Within 10 days following the meeting with the panel from the Advisory Committee on Equity, the Chancellor or Director shall make a written determination whether a violation of University policy has occurred.

In the event the charge of discrimination and/or harassment is not substantiated following the written determination of the Chancellor or Director, reasonable efforts will be taken to restore the reputation of the Respondent.

## VII. SANCTIONS

At the West Lafayette campus, sanctions will be determined by the appropriate Vice President or Dean and the Director. In the case of a student or recognized student organization, the Dean of Students is the appropriate Dean. In the event of a disagreement, the Director and such Vice President or Dean will refer the disagreement to the Provost for resolution.

At the Calumet, Fort Wayne and North Central campuses, sanctions will be determined and imposed by the Chancellor, except that sanctions for students will be imposed by the Dean of Students.

The Chancellor or Director will send the Complainant and the Respondent the written determination and final outcome of the matter, including sanctions, if any, by certified or express mail or by hand delivery. The appropriate Vice President, Vice Chancellor, Vice Provost or Dean is responsible for imposing the sanction.

Sanctions will be decided on a case-by-case basis and will be in accordance with University policy. Possible sanctions for employees include, but are not limited to, the following: a letter of reprimand, suspension or leave of absence without pay, reassignment of teaching or other responsibilities, removal of graduate faculty certification, denial of a merit pay increase, demotion, probation or termination. Sanctions for students are listed in Regulations Governing Student Conduct and may include without limitation verbal or written warnings, probation, probated suspension, suspension or expulsion.

If the accused is a faculty member and the sanction has been to recommend termination of employment, the procedures for termination of a faculty member (as outlined in Executive Memorandum No. B-48 or its successor) will be followed; provided, however, that the report of the University Investigator and the written determination of the Chancellor or Director shall be accepted into evidence at the faculty member's termination hearing without the necessity of the Complainant testifying as a witness. Except as provided herein, sanctions imposed pursuant to these Procedures may not be appealed or made the subject of a grievance under any other University policy.

In the event the investigation of a Formal Complaint demonstrates that the Complainant filed knowingly false or malicious charges, appropriate discipline will result.

## VIII. ENHANCEMENT OF SANCTIONS

If a University employee, student or recognized student organization engages in conduct that constitutes discrimination or harassment motivated by bias based on a person's race, gender, religion, color, age, national origin, ancestry or disability, the sanctions for such conduct are subject to enhancement in accordance with these Procedures.

Sanctions for conduct that constitutes Sexual Violence as defined by the Anti-Harassment policy (III.C.1) are subject to enhancement in accordance with these Procedures when such conduct is accompanied by the administration of rape drugs, including but not limited to Rohypnol, Ketomine, GHB and Burundanga.

## IX. RETALIATION PROHIBITED

Retaliation against any person for reporting or complaining of discrimination and/or harassment, assisting or participating in the investigation of a complaint of discrimination and/or harassment, or enforcing University policies with respect to discrimination and/or harassment is strictly prohibited. Overt or covert acts of reprisal, interference, restraint, penalty, discrimination, intimidation or harassment against an individual or group for exercising rights or performing duties under these Procedures will be subject to appropriate and prompt disciplinary or remedial action.

## X. APPEAL

The Complainant and the Respondent each have the right to appeal the decision of the Chancellor or Director and imposition of any sanction to the Vice President for Ethics and Compliance. The appeal must be in writing and filed within 20 days of the issuance of notification of the decision with all supporting materials attached. Decisions not appealed within such time are deemed final.

The Vice President for Ethics and Compliance will issue a decision on the appeal to all parties involved. Normally this decision will be made within 30 days from the date the appeal was received. The written decision of the Vice President for Ethics and Compliance on the appeal shall constitute the University's final action.

## XI. FILING WITH EXTERNAL AGENCIES

Persons who believe that they have been subjected to discrimination and/or harassment may be able to file a complaint with the Indiana Civil Rights Commission, the U.S. Equal Employment Opportunity Commission or the U.S. Department of Education's Office for Civil Rights. Information regarding filing charges with any of these agencies may be obtained from the Office of Institutional Equity on the West Lafayette campus.



OFFICE OF THE VICE PRESIDENT FOR ETHICS AND COMPLIANCE

September 20, 2011

**Hand Delivered**

Dr. France A. Córdova
President
Purdue University
Hovde Hall, Room 200
610 Purdue Mall
West Lafayette, IN 47907-2040

RECEIVED

SEP 2 1 2011

CHANCELLOR'S OFFICE

**VIA FedEx**

Dr. Michael Wartell
Chancellor
Indiana University – Purdue University
Fort Wayne
Kettler Hall, Room 164
2101 E. Coliseum Boulevard
Fort Wayne, IN 46805

Re: Formal Complaint

Dear President Córdova and Chancellor Wartell:

Following consultation with the Board of Trustees, I have been authorized to
communicate with you regarding the process to be followed in connection with the
formal complaint (the "Complaint") filed by Chancellor Wartell on September 12,
2011.

In light of concerns expressed regarding the appropriateness of the process outlined in
Purdue University's Procedures for Resolving Complaints of Discrimination and
Harassment (the "Procedures") as applied to you in this matter, the University offers
to proceed as follows:

1. An independent investigator (preferably an Indiana attorney with a practice in
   the area of higher education) (the "Investigator") acceptable to each of you
   will be appointed by me to conduct a thorough investigation of the Complaint,
   including interviews with each of you and others as the Investigator may deem
   appropriate. The Investigator will be asked to work expeditiously with a goal
   of concluding the investigation within 45 days.

**EXHIBIT**

ALL-STATE LEGAL®

C

Ernest C. Young Hall, Room 1029 ¤ 155 S. Grant Street ¤ West Lafayette, IN 47907-2114 ¤ (765) 494-5830 ¤ Fax: (765) 496-1295
An Equal Access/Equal Opportunity University

Dr. France A. Córdova
Dr. Michael A. Wartell
September 20, 2011
Page 2

2.  As in the Procedures, the first undertaking of the Investigator will be to
    interview Chancellor Wartell and make a determination as to whether any of
    the allegations, if substantiated, would constitute a violation of the
    University's Anti-Harassment and Equal Opportunity policies (the "Policies").
    In the event that the Investigator determines that any of the allegations, if
    substantiated by a preponderance of the evidence, would constitute a violation
    of the Policies, he/she will conduct an investigation into such allegations.
    Upon the completion of the investigation, the Investigator will determine
    whether: (a) any of the investigated allegations have been substantiated by a
    preponderance of the evidence, whether there has been a violation of the
    Policies, and a recommendation of sanctions, if any; and (b) the Complaint
    was knowingly false or malicious, and a recommendation of sanctions, if any.

3.  The Investigator will prepare and deliver to a three-member panel (the
    "Panel") a report that indicates his/her determinations as described in
    paragraph 2. The Panel will then meet and members of the Panel shall
    consider: (a) the Investigator's report; (b) the Complaint and the Respondent's
    response; and (c) in the event the Panel requests additional information from
    the Investigator or either party, the written submissions provided to the Panel
    in response to such requests. The parties will not meet with the Panel.

4.  The Panel will be selected by me from the members of the Board of Trustees
    (excluding the student Trustee). Before the selection, each of you will have an
    opportunity to provide me with the names of up to two Trustees to be stricken
    from consideration for the Panel. I will select the Panel from the remaining
    Trustees.

5.  The decision of the Panel, which will be in writing and provided to me and to
    each of you, will constitute the University's final action on the matter.

If this process is acceptable you, please sign and return the attached letter to me by
the close of business on September 26, 2011.

Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

Alysa Christmas Rollock
Vice President for Ethics and Compliance

Dear Ms. Rollock:

This responds to your letter, dated September 20, 2011. In your letter, you offer and describe an alternative process (the "Alternative Process") for the investigation and resolution of a Complaint that was filed with your office by Chancellor Michael Wartell against President France A. Córdova (the "Complaint").

Your letter requests that the parties review and consider the Alternative Process. Each party has done so and his/her signature below indicates that: (a) he/she agrees that the Complaint will be investigated and handled pursuant to the Alternative Process; (b) he/she agrees to the terms and procedures described in your letter of September 20, 2011; and (c) he/she waives any and all rights and he/she releases the University, its trustees, agents and representatives from all claims that he/she may have pursuant or relating to the University's *Procedures for Resolving Complaints of Discrimination and Harassment* or any other procedures applicable to the Complaint.

Thank you for your assistance in this matter.

Sincerely,


_____
Michael Wartell
Date: September \_\_\_, 2011


_____
France A. Córdova
Date: September \_\_\_, 2011

## Michael Wartell - Response

| | |
|---|---|
| **From:** | Michael Wartell |
| **To:** | acrollock@purdue.edu |
| **Date:** | 9/28/2011 10:49 AM |
| **Subject:** | Response |
| **Attachments:** | Wartell, Michael.vcf |

With respect to handling of the formal complaint:

With reference to our conversation of September 27, 2011, I will accept with reservation the process you have outlined. In part, my reservation results from Tom Spurgeon, Vice Chair of the Purdue Board, calling Bob Barrett, the presiding officer of the Fort Wayne Senate, on the morning of September 26, 2011 to tell him that the Board was unanimous in its stance on not extending my retirement, the faculty resolution notwithstanding. In addition, sitting board members could be witnesses in the complaint. Thus, I believe that there is already bias and/ or conflict of interest in the system, since continuation is a requested remedy.

On a related issue, the waiver statement appears to be all-encompassing, and is, therefore, unacceptable to me. As stated above, I am willing to accept the structure of this part of the process as modified by you, and am willing to sign such a statement. I do not believe that I should be required to sign the waiver sent by you in order to participate in an internal grievance process, access to which is the right of any employee.

Finally, I believe that Purdue's issuance of the news release concerning the search committee for my replacement, Tom Spurgeon's attempt to influence a Fort Wayne Senate process, and the insistence on my signing such a waiver are retaliatory in nature, resulting from my grievance filing.



## Michael Wartell - Message of September 28, 2011

**From:**    "Rollock, Alysa C." <acrollock@purdue.edu>
**To:**      "Wartell, Michael" <wartell@ipfw.edu>
**Date:**    9/29/2011 9:31 AM
**Subject:** Message of September 28, 2011

Chancellor Wartell:

I am interpreting your message to me of September 28, 2011 as accepting the Alternative Process outlined in my letter of September 20, 2011, with one modification: that you not be required to sign the waiver. If this is not correct, please notify me immediately. If I do not hear from you by the close of business today, I will proceed with the Alternative Process.

Alysa Christmas Rollock
Vice President for Ethics and Compliance
Purdue University
Ernest C. Young Hall, Room 1029
West Lafayette, IN 47907-2114
(765) 494-5830  Fax: (765) 496-1295
E-mail: acrollock@purdue.edu

CONFIDENTIAL COMMUNICATION: This electronic mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged and confidential. If you are not the intended recipient, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you received this e-mail message in error, please immediately notify the sender and delete this e-mail from your computer. Thank you.



file://C:\Documents and Settings\folkan\Local Settings\Temp\XPgrpwise\4E842B0Deure    9/29/2011

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | 470·2012·02010 |

and EEOC

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Michael A. Wartell | (260) 485-7857 |

| STREET ADDRESS     CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 8107 Tranquilla Place, Fort Wayne, IN 46815 | 11/4/1946 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Purdue University | Approximately 15,100 | |

| STREET ADDRESS     CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| Houde Hall, Office of the President, 610 Purdue Mall, WEST LAFAYETTE, IN 47907-2040 | Tippicanoe |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS     CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | 2/14/2012 |
| ☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Charging Party has been the Chancellor of the Indiana Purdue University Fort Wayne ("IPFW") for 18 years. The Charging Party's immediate supervisor is the President at Purdue University, who is currently France Cordova (female). In or around late 2010 or early 2011 the president announced at a meeting that before her term as president was over she wanted to increase the number of females in the administration of the university. She specifically pointed to a picture of the Charging Party on a board and said "I'm going to replace this one with a woman."

On July 1, 2011, the president announced that she was leaving the University. Subsequently, the president told the Charging Party that she would not grant the Charging Party an extension to the mandatory retirement date (i.e. his 65th birthday). The past practice of the University has been to grant extensions to all officials who requested them including past chancellors. The president denied the Charging Party's request for an extension because he is male and she wanted a female chancellor at IPFW.

The Charging Party filed an internal complaint with the University which was denied on February 14, 2012.

| I want this charge filed with both the EEOC and the State or local Agency, if any I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)   Notary |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 4/26/12 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  4/26/12 (Day, month, and year) |
| Date     Charging Party (Signature) | SUSAN J. TUMBLESON  ALLEN Co. |

EEOC FORM 5 (REV. 3/01)

MY COMMISSION EXPIRES 11/8/2017

**EXHIBIT**

**F**

ALL-STATE LEGAL®

## ~~AMENDED~~ CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 470-2012-02010 |
| ☐ EEOC | |

| | and EEOC |
|---|---|

| State or local Agency, if any | S.S. No. | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dr. Michael A. Wartell | (260) 485-7857 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 8107 Tranquilla Place | Fort Wayne, Indiana 46815 | 11/4/1946 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Purdue University | Approximately 15,100 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Houde Hall, Office of the President, 610 Purdue Mall, West Lafayette, Indiana 47907-2040 | | Tippecanoe |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ AGE |
|---|---|---|---|---|
| ☐ RETALIATION | ☐ NATIONAL ORIGIN | ☐ DISABILITY | ☐ OTHER (Specify) | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)
July 15, 2011

☐ CONTINUING ACTION

EEOC Indianapolis District Office
SEP 14 2012
RECEIVED

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Charging Party was the Chancellor of Indiana-Purdue University Fort Wayne ("IPFW") for eighteen years. The Charging Party's immediate supervisor was the President at Purdue University. At all times relevant to this Amended Charge of Discrimination Purdue University's President was France Cordova (female) ("Cordova").

On or about May 19, 2011, Cordova called the Charging Party and informed him that the Purdue University Board had decided that the Charging Party would retire June 30, 2012 in accordance with Purdue University's mandatory retirement requirement. The Charging Party learned on or about May 26, 2011, however, that the Board had not yet discussed whether it would force the Charging Party's retirement and would not discuss the topic until the Board's July 2011 meeting.

On or about July 1, 2011, Cordova announced that she was leaving Purdue University. On or about July 12, 2011, then Chairman of the Purdue University Board, Keith Krach ("Krach"), told the Charging Party that the Board had decided that Cordova's recommendation would be accepted and that Cordova recommended against the Charging Party's continuation as Chancellor. Since Krach indicated that the Charging Party's continuation was up to Cordova, the Charging Party immediately sent correspondence to Cordova, requesting an extension to the mandatory retirement date. The past practice of Purdue University has been to grant extensions to all officials who requested them, including past Chancellors. On or about July 15, 2011, Cordova denied the Charging Party's request for an extension.

Also on or about July 15, 2011, the Charging Party was informed that, in or around late 2010 or early 2011, Cordova announced at a meeting that before her term as President was over she wanted to increase the number of females in the Purdue University administration. Cordova specifically pointed to a picture of the Charging Party on a Board and said "I am going to replace this one with a woman." Cordova denied the Charging Party's request for an extension to the mandatory retirement age because the Charging Party is a male, and Cordova wanted a female Chancellor at IPFW.

The Charging Party filed an internal complaint with Purdue University, which was denied on February 14, 2012.

EXHIBIT
G

ALL-STATE LEGAL®

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) Janet L. Shilling-I affirm I personally know signatore and attest to his signature. <br><br> *County of Noble    Comm. expires* <br> *Janet L. Shilling* *State of IN    Feb. 28, 2012* <br><br> ~~I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.~~ |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. <br><br> 9/13/12 <br> Date    *Charging Party (Signature)* | SIGNATURE OF COMPLAINANT <br><br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | 4M·2012·03350 |
| | and EEOC |

| State or local Agency, if any | S.S. No. | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dr. Michael A. Wartell | (260) 485-7857 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 8107 Tranquilla Place | Fort Wayne, Indiana 46815 | 11/4/1946 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Purdue University | Approximately 15,100 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Houde Hall, Office of the President, 610 Purdue Mall, West Lafayette, Indiana 47907-2040 | | Tippecanoe |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ AGE |
|---|---|---|---|---|
| ☐ RETALIATION | ☐ NATIONAL ORIGIN | ☐ DISABILITY | ☐ OTHER (Specify) | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA) LATEST (ALL)
June 30, 2012

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Charging Party was the Chancellor of Indiana-Purdue University Fort Wayne ("IPFW") for eighteen years. The Charging Party's immediate supervisor was the President at Purdue University. At all times relevant to this Amended Charge of Discrimination Purdue University's President was France Cordova (female) ("Cordova").

On or about May 19, 2011, Cordova called the Charging Party and informed him that the Purdue University Board had decided that the Charging Party would retire June 30, 2012 in accordance with Purdue University's mandatory retirement requirement. The Charging Party learned on or about May 26, 2011, however, that the Board had not yet discussed whether it would force the Charging Party's retirement and would not discuss the topic until the Board's July 2011 meeting.

On or about July 1, 2011, Cordova announced that she was leaving Purdue University. On or about July 12, 2011, then Chairman of the Purdue University Board, Keith Krach ("Krach"), told the Charging Party that the Board had decided that Cordova's recommendation would be accepted and that Cordova recommended against the Charging Party's continuation as Chancellor. Since Krach indicated that the Charging Party's continuation was up to Cordova, the Charging Party immediately sent correspondence to Cordova, requesting an extension to the mandatory retirement date. The past practice of Purdue University has been to grant extensions to all officials who requested them, including past Chancellors. On or about July 15, 2011, Cordova denied the Charging Party's request for an extension.

Also on or about July 15, 2011, the Charging Party was informed that, in or around late 2010 or early 2011, Cordova announced at a meeting that before her term as President was over she wanted to increase the number of females in the Purdue University administration. Cordova specifically pointed to a picture of the Charging Party on a Board and said "I am going to replace this one with a woman." Cordova denied the Charging Party's request for an extension to the mandatory retirement age because the Charging Party is a male, and Cordova wanted a female Chancellor at IPFW.

The Charging Party filed an internal complaint with Purdue University, which was denied on February 14, 2012. (cont.)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will | NOTARY - (When necessary for State and Local Requirements) |
|---|---|

EXHIBIT
H
ALL-STATE LEGAL®

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)) (cont.):*

On or about June 30, 2012, the Charging Party was demoted from IPFW Chancellor to IPFW Chancellor Emeritus. Cordova and Purdue University demoted the Charging Party because he is male, and Cordova wanted a female Chancellor at IPFW. Purdue University replaced the Charging Party with a sixty-four year old female Chancellor.

| cooperate fully with them in the processing of my charge in accordance with their procedures. | I affirm that I personally know signature and attest to his signature, Notary Janet L. Shilling County of Noble comm.expires Janet L. Shilling State of IN Feb 28, 2020 |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 9/13/12<br>Date          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

EEOC FORM 5 (Test 10/94)

EEOC Form 161 (11/09) U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Michael Wartell<br>8107 Tranquilla Place<br>Fort Wayne, IN 46815 | From: | Indianapolis District Office<br>101 West Ohio St<br>Suite 1900<br>Indianapolis, IN 46204 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2012-02010 | Brien L. Shoemaker,<br>Enforcement Supervisor | (317) 226-6118 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Webster N. Smith,
District Director

JAN 3 1 2013
(Date Mailed)

Enclosures(s)

cc:
| Alysa C. Rollock<br>VP Ethics & Compliance<br>PURDUE UNIVERSITY<br>155 S. Grant<br>Ernest C. Young Hall, 10th floor<br>West Lafayette, IN 47907 | J. Blake Hike<br>CARSON BOXBERGER, LLP<br>1400 One Summit Square<br>Fort Wayne, IN 46802 |
|---|---|

**EXHIBIT**
I
ALL-STATE LEGAL®

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*