UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL A. WARTELL | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-00099RLM-APR |
| | ) |
| PURDUE UNIVERSITY, | ) |
| ALYSSA ROLLOCK, MICHAEL | ) |
| BERGHOFF, JOANN BROUILLETTE, | ) |
| MICHAEL J. BIRCK, JOHN D. | ) |
| HARDIN, JR., KEITH J. KRACH, | ) |
| GARY J. LEHMAN, MIRANDA | ) |
| McCORMACK, THOMAS SPURGEON, | ) |
| DONALD THOMPSON and | ) |
| BRUCE WHITE | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on the Plaintiff's Motion to Compel Discovery or, in the Alternative, to Stay Proceedings [DE 29] filed by the plaintiff, Michael A. Wartell, on May 8, 2014, and the Motion to Defer Obligation to Respond to the Defendants' Motion for Summary Judgment [DE 35] filed by Wartell on July 11, 2014. For the following reasons, both motions are **GRANTED**.

Background

This matter arises from the claim of the plaintiff, Michael A. Wartell, that he was harassed and discriminated against following a denial of his request for an extension of Purdue's mandatory retirement age. Wartell filed a complaint against Purdue President France Córdova. An investigation into the allegation was commenced under university procedures. The normal

1

university procedure involved an investigation by a Purdue employee. A three member panel selected by the official of the Advisory Committee on Equity would advise the selected employee. The employee then would make a written determination whether a violation of university policy had occurred.

Wartell expressed concern to Alyssa Rollock, Purdue's Vice President for Ethics and Compliance, over the ordinary procedure because his complaint was against the President and the selected employee would report to the President. Rollock proposed an alternative process in which an "independent investigator (whom they preferred would be an Indiana attorney with practice in the area of higher education)," who would be agreed upon by both parties, would conduct the investigation. Wartell and Córdova both agreed to the proposed investigation by an "independent investigator" who would conduct an investigation and determine whether the allegations were "substantiated by a preponderance of the evidence" and if any policies were violated. The investigator would prepare a written report with the determinations, and the three-member panel of Purdue trustees would make the final decision.

Rollock retained attorney John Trimble to conduct the investigation. Neither Wartell nor Córdova objected to the use of Trimble. Wartell understood that Purdue was retaining Trimble and also would be paying for his fees. Trimble conducted his investigation. He interviewed Wartell, Córdova, and approximately a dozen others during his investigation. Trimble prepared a report with his determinations and recommendations for the Trustee Panel. No one besides the panel was designated as an intended recipient of Trimble's report. No one else received a copy.

The three member Trustee Panel found that there was no discrimination. After that decision, Wartell submitted an Indiana Access to Public Records Act ("ARPA") request for

Trimble's report and any other documents prepared by Trimble regarding the complaint to Purdue's public records officer. His request was denied. Wartell subsequently filed a complaint with the State Public Access Counselor. The counselor issued an advisory opinion finding that Purdue did not violate the ARPA and would be allowed to cite to attorney-client privilege or Ind. Code § 5-14-3-4(b)(2) denying the request for the records of Trimble's investigation of Wartell's complaint.

Wartell filed a complaint in the Tippecanoe Circuit Court seeking to compel Purdue to allow him to inspect or copy Trimble's investigation report. The court held that Purdue was estopped from invoking the attorney-client privilege or work-product privilege in order to prevent disclosure of the records or documents pertaining to Trimble's investigation of Wartell's complaint. Purdue filed an interlocutory appeal. The Indiana Court of Appeals affirmed the trial court's decision.

The Court of Appeals explained that Trimble had to be acting either as an independent investigator or as an advocate for Purdue. If he was an independent investigator, the attorney-client and work product privileges were inapplicable. However, the court went on to conclude that it was unnecessary to determine Trimble's role because even if he acted as an advocate for Purdue, Purdue still could not shield production based on the attorney-client or work product privileges because Trimble's role was never revealed to Wartell.

The court explained that previously it did not recognize an equitable estoppel exception to the attorney-client or work product privileges. However, Trimble had a duty to disclose his role as an advocate for Purdue, and the record revealed that he did not. The court created a new exception to the privileges so that they could not be asserted when the party's conduct

3

knowingly misled or induced another party to believe and act upon that conduct in good faith and without knowledge of the facts. Because Trimble was held out to be an investigator and it was not disclosed to Wartell that Trimble was acting as Purdue's advocate, Wartell was misled and Purdue could not shield production of the report by asserting the attorney-client or work product privileges.

On April 1, 2013, Wartell filed a complaint in this court alleging Title VII gender discrimination, deprivation of his Due Process rights, and breach of contract under Indiana law. On January 15, 2014, Wartell served his First Request for Production of Documents on the defendants. Request 10 asked for the report prepared by Trimble, as well as any documentation or communications related to Trimble's investigation of Wartell's complaint against Cordóva. On March 18, 2014, the defendants served their Response to Wartell's First Request for Production of Documents. Purdue objected based on the attorney-client privilege. Wartell then filed the present Motion to Compel on May 8, 2014.

Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." **Federal Rule of Civil Procedure 26(b)(1)**. For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting ***Oppenheimer Fund, Inc. v. Sanders****,* 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses

4

identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. ***Borom v. Town of Merrillville***, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing ***Sanyo Laser Prods., Inc. v. Arista Records, Inc.***, 214 F.R.D. 496, 502 (S.D. Ind. 2003)); *see also* ***Adams v. Target****,* 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); ***Shapo v. Engle****,* 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. **Federal Rule of Civil Procedure 37(a)(2)-(3)**. The burden "rests upon the objecting party to show why a particular discovery request is improper." ***Gregg v. Local 305 Ibew***, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(citing ***Kodish v. Oakbrook Terrace Fire Protection Dist.***, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); ***McGrath v. Everest Nat. Ins. Co.***, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); ***Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services***, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. ***Cunningham v. Smithkline Beecham***, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(citing ***Graham v. Casey's General Stores***, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." ***Cunningham***, 255 F.R.D. at 478 (citing ***Burkybile v. Mitsubishi Motors Corp.***, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2,

5

2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." **Berning v. UAW Local 2209**, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining **Patterson v. Avery Dennison Corp.**, 281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and citations omitted). *See also,* **Hunt v. DaVita, Inc**., 680 F.3d 775, 780 (7th Cir. 2012)(explaining that the district court has broad discretion in supervising discovery).

Wartell requests the report prepared by John Trimble, as well as any documentation or communication related to the investigation performed based on the complaint by Wartell against the President from Purdue University. Purdue first objects to the motion, raising the work-product privilege. The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**Fed. R. Civ. P. 26(b)(3)(A) - (B);** *see also* **Boyer v. Gildea**, 257 F.R.D. 488, 490 (N.D. Ind. 2009)(applying the Rule). To meet the qualified immunity from discovery based on Rule 26(b)(3), the materials sought must be: "(1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's

representative." ***Boyer***, 257 F.R.D. at 490 (*citing* Wright, Miller & Marcus, **8 Federal Practice & Procedure** § 2024 (3d ed.)).  "The core of attorney work product consists of 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" ***Menasha Corp. v. United States Department of Justice***, 707 F.3d 846, 851 (7th Cir. 2013).

The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial.  ***Caremark, Inc. v. Affiliated Computer Services***, Inc., 195 F.R.D. 610, 614 (N.D. Ill. 2000).  The test for each document is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." ***Caremark***, 195 F.R.D. at 614 (*citing and quoting* ***Binks Mfg. Co. v. National Presto Indus., Inc***., 709 F.2d 1109, 1118-19 (7th Cir. 1983)).  Precedent is clear that eventual litigation does not ensure protection of all materials prepared by attorneys - the "remote prospect of future litigation" does not suffice to bring the work product doctrine into play.  ***Binks***, 709 F.2d at 1120.  Materials or investigative reports developed in the ordinary course of business do not qualify as work product; only if the material or report came into existence because of the litigation or because of an existing articulable claim likely to lead to litigation can the doctrine apply.  ***Caremark***, 195 F.R.D. at 614.

Purdue brings the court's attention to ***Sandra T.E v. S. Berwyn Sch. Dist. 100***, 600 F.3d 612, 622 (7th Cir. 2010) to show that an investigation conducted by an attorney for the school is privileged.  However, the court in ***Sandra*** explained that there is a "distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect

of litigation' and documents prepared because some articulable claim, *likely* to lead to litigation, [has] arisen.' Only documents prepared in the latter circumstances receive work-product protection." *Sandra*, 600 F.3d at 622 (*quoting* **Binks Mfg. Co.**, 709 F.2d at 1120).

Purdue has acknowledged that its ordinary course of action to respond to an employee complaint was to conduct an investigation as was performed by Trimble. Therefore, the report was not prepared solely because litigation was imminent, and the record is devoid of evidence that the report was done in preparation of litigation. This further is supported by the fact that a non-attorney employee usually conducted the investigation, in which case, there would not be any privilege. The only apparent reason Purdue varied from its ordinary procedure was because of the potential for conflict. For those reasons, the documents prepared by Trimble were not created in anticipation of litigation and are not protected by the work product privilege.

Purdue also has raised the attorney-client privilege in response to Wartell's motion to compel. The attorney-client privilege protects communications between a client and his lawyer. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L.Ed.2d 584 (1981). *See also* **Menasha Corp. v. United States Department of Justice**, 707 F.3d at 851 (explaining that the privilege extends even to adversaries who are part of a single party and is not destroyed because an organization is large and diverse). The Seventh Circuit applies the privilege under the following principles:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The party seeking to claim the privilege bears the burden of establishing the all of the requirements for invoking the attorney-client privilege are met. *White*, 950 F.2d at 430. "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *White*, 950 F.2d at 430 (*citing United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983))(internal quotation omitted).

The attorney-client privilege is not applicable solely because Trimble was an attorney. Rather, the court must examine his role to determine whether he was providing legal advice or acting as an independent investigator. *See e.g. Stout v. Illinois Farmers Insurance Co.*, 150 F.R.D. 594, 610 (S.D. Ind. 1993) (explaining that the attorney-client privilege does not apply when the attorney acted as insurance claims adjustors, claims process supervisors, or claims investigators); *Continental Casualty Co. v. Marsh*, 2004 WL 42364, *2 (N.D. Ill. Jan. 6, 2004) (same). To do so, the court must consider the duties the attorney performed. Tasks such as interviewing, inspecting, and engaging in conversations prior to the imminent prospect of litigation generally remove the attorneys activities from the purview of the attorney-client privilege. *See Illiana Surgery and Medical Center v. Hartford*, 2010 WL 4852459 (N.D. Ind. Nov. 18, 2010).

Here, it is apparent that Trimble acted in the role of an independent investigator rather than as an attorney. Generally, Purdue selected an employee to conduct investigations. Trimble filled this role and performed the functions that the non-attorney employee generally would have completed. He interviewed employees and prepared a report for the trustee panel with his

9

recommendations. At this time, Wartell had not filed a lawsuit, and there is no evidence that the present lawsuit was imminent. In fact, if Purdue would have decided in Wartell's favor upon receipt of the report, the lawsuit likely would have been avoided. Moreover, Wartell and Cordova had agreed that the investigation would be conducted by an "independent investigator." The term "independent" suggests that the investigator would not be working on behalf of either party, but rather would be neutral. Trimble also understood that he "owed it to everyone involved to do a thorough, competent, and fair investigation." ***Purdue University v. Wartell***, 5 N.E.2d 797, 807 (Ind. App. 2014).

The record does not reflect that Trimble was giving legal advice by conducting the investigation and report. Rather, he was conducting an internal investigation so that Purdue could determine how to respond prior to the prospect of litigation. This further is supported by the fact that Trimble did not disclose that he was acting as Purdue's advocate despite having an obligation to do so if he was acting in such a role. *See* **Ind. Professional Conduct Rule 1.13(f)** ("In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing."); ***Purdue Univ. v. Wartell***, 5 N.E.3d at 807-808. Purdue has not identified any legal advice that Trimble offered. For all of these reasons, Purdue has failed to meet its burden to show how Trimble's activities equated to legal advice. The court **GRANTS** Wartell's motion to compel. Purdue is **DIRECTED** to produce the report within fourteen days.

Wartell also requested an extension of his deadline to respond to the defendants' motion

for summary judgment pending ruling on his motion to compel, or alternatively, to stay the proceedings.  The court **GRANTS** Wartell up to and including September 30, 2014 to file his response to the defendants' motion for summary judgment.

ENTERED this 24th day of July, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge