UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| MICHAEL A. WARTELL, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| vs. | ) | CAUSE NO. 1:13-CV-99 RLM-APR |
| PURDUE UNIVERSITY, et al. | ) | |
| Defendants | ) | |

OPINION AND ORDER

This case arises from an ungainly set of facts. On this Civil Rule 72(a) objection to Magistrate Judge Andrew P. Rodovich's ruling on a motion to compel, this judge becomes the sixth Indiana or federal judge to consider Purdue University's claim that the attorney-client privilege protects documents sought by plaintiff Michael A. Wartell. For the reasons that follow, this judge becomes the sixth to reject Purdue's argument and order Purdue to produce the documents.

I

Indiana University-Purdue University Fort Wayne Chancellor Michael Wartell asked for a waiver of the university's mandatory retirement age, and University President Frances Cordova declined the request. Dr. Wartell says Dr. Cordova then harassed and discriminated against him on the basis of sex and age, and Dr. Wartell filed an internal complaint against Dr. Cordova. Such a complaint ordinarily would trigger internal Purdue procedures for resolving complaints of discrimination and harassment. Under those procedures, a Purdue employee

would investigate the complaint and, after consulting with a panel chosen by the advisory committee on equity, the panel would make a written resolution of the complaint.

It seems that this sort of dispute between the president and chancellor aren't routine at Purdue, and Dr. Wartell expressed concern about the fairness of a process in which people who answer to the president would investigate and resolve his claim against the president. The board of trustees proposed a special one-time only method of addressing Dr. Wartell's complaint. Purdue Vice President Alysa Christmas Rollock proposed that method to Dr. Cordova and Dr. Wartell in a letter, and both agreed to it. This is the first step of the procedure outlined in Vice President Rollock's letter:

> 1. An independent investigator (preferably an Indiana attorney with a practice in the area of higher education) (the "Investigator") acceptable to each of you will be appointed by me to conduct a thorough investigation of the Complaint, including interviews with each of you and others as the Investigator may deem appropriate. The Investigator will be asked to work expeditiously with a goal of concluding the investigation within 45 days.

The investigator was to begin by interviewing Dr. Wartell, then decide whether any of Dr. Wartell's allegations, if substantiated by a preponderance of the evidence, would amount to a violation of Purdue's anti-harassment and equal opportunity policies. If so, the investigator would continue the investigation to determine whether any allegation was substantiated, whether any substantiated allegation violated university policies, what sanctions should be imposed on either side.

Vice President Rollock was to appoint a panel consisting of three members of the board of trustees (with the president and chancellor each to have what amounted to two peremptory challenges). This is what the investigator was to do with respect to that panel:

> 3. The Investigator will prepare and deliver to a three-member panel (the "Panel") a report that indicates his/her determinations as described in paragraph 2. The Panel will then meet and members of the Panel shall consider: (a) the Investigator's report; (b) the Complaint and Respondent's response; and (c) in the event the Panel requests addition information from the Investigation or either party, the written submissions provided to the Panel in response to such requests. The parties will not meet with the Panel.

The Panel's written decision was to be final.

After the president and chancellor agreed to that procedure, Vice President Rollock engaged John C. Trimble, a prominent Indianapolis attorney, to serve as the investigator, to be paid by Purdue. Neither the president nor the chancellor objected to Mr. Trimble's selection. But it appears that Chancellor Wartell and Vice President Rollock might have differed in their understanding of the role Mr. Trimble was to play. Vice President Rollock retained Mr. Trimble as an attorney for Purdue. Chancellor Wartell didn't learn that Mr. Trimble had been retained in that capacity until much later.

Mr. Trimble set about the tasks outlined in the vice president's letter. He interviewed the president, the chancellor, and about twelve others. When he interviewed Dr. Wartell, Mr. Trimble didn't disclose that he was acting as Purdue's

3

attorney (the limited record before the court doesn't explain why he didn't). Mr. Trimble prepared his report and submitted it to — and only to — the three-trustee panel. The panel found that no discrimination occurred, and sent its decision to the president, the chancellor, and Vice President Rollock.

Dr. Wartell asked to see Mr. Trimble's report and Purdue ultimately denied his request under the Indiana Access to Public Records Act. Dr. Wartell pursued the matter to the State Public Access Counselor, who said the attorney-client privilege justified Purdue's decision not to release Mr. Trimble's report. Dr. Wartell moved on to the Tippecanoe Circuit Court, which ordered Purdue to release the Trimble report and associated documents, finding that Purdue was equitably estopped from claiming either the attorney-client privilege or the work-product privilege.

Purdue appealed. The Court of Appeals of Indiana unanimously affirmed on the basis of equitable estoppel. Purdue University v. Wartell, 5 N.E.3d 797 (Ind. Ct. App. 2014). No previous appellate decision in Indiana had applied equitable estoppel to the attorney-client privilege. The court of appeals did so because, as it saw the facts, Purdue had concealed from Dr. Wartell that it had retained Mr. Trimble as an attorney rather than as an independent investigator, while Dr. Wartell's guileless understanding of Mr. Trimble's role led Dr. Wartell to sit for an interview. 5 N.E.2d at 808-809. Purdue's motion for transfer to the Indiana supreme court pends.

4

While the Indiana litigation was going on, Dr. Wartell filed suit in this court for sex discrimination, violation of due process, and breach of contract. Inevitably, Dr. Wartell filed a request for production of Mr. Trimble's report and associated documents, and Purdue refused to produce them because of the attorney-client and work-product privileges. Dr. Wartell moved to compel. His original motion invoked the doctrine of equitable estoppel, but the issues expanded as the parties briefed the motion before Magistrate Judge Rodovich, to whom all non-dispositive pretrial motions had been referred. Judge Rodovich ruled against Purdue with respect to the work-product doctrine, because the report and documents hadn't been prepared in anticipation of litigation; Purdue doesn't challenge that ruling.

Magistrate Judge Rodovich also rejected Purdue's attorney-client privilege claim. He set forth the eight-part test our court of appeals articulated in United States v. White, 950 F.2d 426, 430 (7th Cir. 1991), the first of which is that legal advice was sought. He looked to the tasks Mr. Trimble was asked to perform. Magistrate Judge Rodovich noted that Mr. Trimble was to perform investigative tasks a non-lawyer employee would perform in a less extraordinary case. Mr. Trimble interviewed people and wrote a recommendation to the three-trustee panel No lawsuit was pending or imminent. Magistrate Judge Rodovich noted that Mr. Trimble didn't tell Chancellor Wartell that he was representing Purdue; an Indiana attorney generally must make such a disclosure when the organization he represents might have interests adverse to the officer with whom the lawyer is dealing. Ind. Prof. Cond. R. 1.13(f). Magistrate Judge Rodovich concluded that

Purdue had "failed to meet its burden to show how Trimble's activites equated to legal advice." [Doc. 36, at p.10].

Purdue filed a partial objection (Purdue doesn't challenge the magistrate judge's decision on the work-product privilege) to the order granting Dr. Wartell's motion to compel. Fed. R. Civ. P. 72(a). Both sides filed briefs and supplementary evidentiary materials, and the court heard oral argument on August 27.

II

A

The court begins by addressing some procedural underbrush. First, Dr. Wartell points to the Indiana court of appeals decision as pertinent to this court's decision. But the Indiana court of appeals was dealing with the Indiana attorney-client privilege and its limits, and made no effort to review federal privilege law. Federal law provides the rule of decision in this case, so federal common law, as interpreted in the federal courts in light of reason and experience, governs Purdue's privilege claim. Fed. R. Evid. 501. Dr. Wartell cites Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058 (7th Cir. 1981), as authority for the proposition that federal courts should consider the law of the state in which the case arises and recognize that state's evidentiary privileges if it can be done at no substantial cost to federal substantive and procedural policy.[1] That's precisely

---

[1] The court located Mattice v. Memorial Hosp. of South Bend, Inc., 249 F.3d 682 (7th Cir. 2001), which Dr. Wartell also cited, but sees no applicability to this case.

6

what the court of appeals did in the Memorial Hospital case, but the court isn't persuaded to do so here. This is a district court considering a ruling that will affect only the parties to Northern District of Indiana civil cause number 1:13-CV-99 RLM-APR. A court of appeals is in a considerably better position to add or limit federal privilege law if a state has a good idea. The Memorial Hospital court looked to Illinois law, but didn't consider adopting the Illinois privilege for certain confidential hospital records only for that case or only for cases arising in Illinois; it considered whether such a privilege would be good for the federal courts in the Seventh Circuit.

This district court isn't the best venue to decide whether federal evidence law should add an equitable estoppel exception to the federal attorney-client privilege.

B

More underbrush needs clearing. With its objection, Purdue filed evidentiary material that wasn't in the record when Magistrate Judge Rodovich issued his decision. Dr. Wartell has moved to strike that material. The motion to strike is significant: amid Purdue's additional evidentiary submission are excerpts from the deposition of Vice President Rollock and Mr. Trimble in which both say they understood that Mr. Trimble was being retained as an attorney to render legal services to Purdue. There might be cases in which courts found no attorney-client privilege when the principal and the attorney both believed the attorney was

7

retained to provide legal services, but they certainly are few in number. Those deposition excerpts weren't part of the record before Magistrate Judge Rodovich. Dr. Wartell has moved to strike all evidentiary material that wasn't before the magistrate judge.

The court agrees with Dr. Wartell on this issue. Rule 72(a) of the Federal Rules of Civil Procedure, which governs objections to a magistrate judge's ruling on a non-dispositive matter, provides in part, "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." For clear error to be found because the magistrate judge didn't properly weigh evidence not in the record would take a case considerably more extraordinary than this one. Purdue contends that district courts addressing a Rule 72(a) objection have discretion to hear evidence that wasn't before the magistrate judge, and cites 12 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3069 (2d ed. 2013), and <u>United States v. Caro</u>, 461 F. Supp. 2d 478 (W.D. Va. 2006). The treatise's position seems to be more exhortative than authoritative, and the <u>Caro</u> court, which was considering a capital case, simply declared in a footnote that such authority exists. If the <u>Caro</u> court, Wright and Miller, and Purdue are correct, considering previously extrajudicial material should be the exception rather than the rule, and a good reason should exist before a court does so.

Purdue says good reason exists here. Dr. Wartell based his motion to compel solely on the Indiana court of appeals' decision and asked the magistrate

8

judge to hold Purdue equitably estopped from withholding the documents on privilege grounds. There was no reason, Purdue says, for Purdue to have come forth with evidence that didn't relate to the equitable estoppel argument. Taking a slightly broader view, this court can't agree.

As Magistrate Judge Rodovich accurately noted, a party claiming protection of the attorney-client privilege carries the burden of demonstrating its applicability. United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). Purdue couldn't withhold the requested documents simply because the federal courts don't recognize equitable estoppel in this context; Purdue could only withhold the documents if they were privileged. At least with respect to the attorney-client claim, it's hard to imagine anything more pertinent to that burden than deposition testimony from both the attorney and the vice president who retained the attorney that both thought an attorney was being hired to provide legal services.

The parties had a full opportunity to put before the magistrate judge whatever information either thought pertinent. Application of the clear error standard in this case demands that review be limited by the information before the magistrate judge. The court grants Dr. Wartell's motion to strike the additional materials.

C

Purdue says that in any event, it is complaining about errors of law, and Rule 72(a) allows district courts to modify or set aside a magistrate's non-

dispositive order that is contrary to law. Purdue argues that Magistrate Judge Rodovich made three errors of law. The court already has addressed one of those: that the Magistrate Judge erred in deciding the motion on a ground the parties hadn't raised.

D

Purdue says Magistrate Judge Rodovich committed an error of law by holding that an attorney must act as an "advocate" for the attorney-client privilege to apply. This court can't find such a holding in the magistrate judge's opinion and order. Stripped of citations, here is what Magistrate Judge Rodovich wrote:

> The attorney-client privilege is not applicable solely because Trimble was an attorney. Rather, the court must examine his role to determine whether he was providing legal advice or acting as an independent investigator. To do so, the court must consider the duties the attorney performed. Tasks such as interviewing, inspecting, and engaging in conversations prior to the imminent prospect of litigation generally remove the attorneys activities from the purview of the attorney-client privilege.
> Here, it is apparent that Trimble acted in the role of an independent investigator rather than as an attorney. Generally, Purdue selected an employee to conduct investigations. Trimble filled this role and performed the functions that the non-attorney employee generally would have completed. He interviewed employees and prepared a report for the trustee panel with his recommendations. At this time, Wartell had not filed a lawsuit, and there is no evidence that the present lawsuit was imminent. In fact, if Purdue would have decided in Wartell's favor upon receipt of the report, the lawsuit likely would have been avoided. Moreover, Wartell and Cordova had agreed that the investigation would be conducted by an "independent investigator." The term "independent" suggests that the investigator would not be working on behalf of either party, but rather

10

> would be neutral. Trimble also understood that he "owed it to everyone involved to do a thorough, competent, and fair investigation."
>
> The record does not reflect that Trimble was giving legal advice by conducting the investigation and report. Rather, he was conducting an internal investigation so that Purdue could determine how to respond prior to the prospect of litigation. This further is supported by the fact that Trimble did not disclose that he was acting as Purdue's advocate despite having an obligation to do so if he was acting in such a role. Purdue has not identified any legal advice that Trimble offered. For all ofthese reasons, Purdue has failed to meet its burden to show how Trimble's activities equated to legal advice. The court GRANTS Wartell's motion to compel. Purdue is DIRECTED to produce the report within fourteen days.

[Doc. No. 36 at pp. 9-10].

The holding Purdue cites as a legal error simply isn't there. The only time the opinion uses the word "advocate" is when the opinion notes that Mr. Trimble didn't tell Dr. Wartell "that he was acting as Purdue's advocate." It appears to this court that the magistrate judge simply used "advocate" as a synonym for "counsel" or "attorney." The magistrate judge didn't say, much less hold, that an attorney must be acting as an "advocate" (as opposed to, say, a "counselor") for the privilege to apply.

E

Finally, Purdue contends that the magistrate judge erred as a matter of law by not following (or even discussing with respect to the attorney-client privilege) the court of appeals' decision in <u>Sandra T.E. v. South Berwyn Sch. Dist. 100</u>, 600 F.3d 612 (7th Cir. 2010). In <u>Sandra T.E.</u>, a law firm's investigative materials for

11

a school were deemed privileged, Purdue argues, compelling a similar holding here. But this is a far different case than was Sandra T.E.

Sandra T.E. stemmed from criminal charges against a school teacher for molesting a number of elementary school students over a period of years. The School Board called in a law firm — Sidley Austin LLP — and sent letters to parents saying that Sidley Austin had been hired to conduct an investigation. Lawsuits were filed against the School Board for failing to protect the students, and the plaintiff parents moved to compel the School Board to produce the report of Sidley Austin's investigation and surrounding documents. Sidley Austin doesn't appear to have been a party to the hearing on the motion to compel. The district judge, considering evidence from the parents and the school board, found that the Board had hired Sidley Austin simply to investigate — because that's what the Board said in its letter to all parents. It soon became clear that the requested documents weren't with the Board, but rather were with Sidley Austin, so the law firm finally was invited (by way of a rule to show cause) to join the party. Sidley Austin presented the engagement letter between Sidley Austin and the Board, which engaged the firm not merely to investigate, but also to evaluate the legal sufficiency of the Board's compliance procedures and to provide legal services to the Board in connection with the investigation. The engagement letter didn't resonate with the district judge, who simply announced that his earlier privilege ruling would stand, and that Sidley Austin had to produce the documents.

The court of appeals reversed. It found that the district court had erred in tacitly disregarding the engagement letter and giving almost conclusive weight to the letter the Board sent to parents. The court of appeals stressed three facts on its way to finding the privilege applicable: (1) the engagement letter itself – "the most important piece of evidence," 600 F.3d at 619, (2) the report to the Board was "Privileged and Confidential," "Attorney-Client Communication," and "Attorney Work Product," 600 F.3d at 620, and (3) the attorneys' method of conducting interviews that were part of the investigation.

As to the last point, the court of appeals noted that under <u>Upjohn Co. v. United States</u>, 449 U.S. 383 (1981), attorneys for an organization must disclose their role when interviewing agents of the organization whose interests might be adverse to the organization.

> . . . the conduct of Sidley attorneys during the investigation confirms that they were acting in their capacity as attorneys. During the confidential interviews with school-district employees, the attorneys provided so-called "*Upjohn* warnings" emphasizing that Sidley represented the School Board and not the employee and that the SCHOOL board had control over whether the conversations remained privileged.

600 F.3d at 620.

Those observations help explain another part of Magistrate Judge Rodovich's opinion that Purdue sees as error. The magistrate judge noted that when Mr. Trimble interviewed Chancellor Wartell, Mr. Trimble didn't disclose any attorney-client relationship with Purdue. Tossing Mr. Trimble at least in the direction of the bus, Purdue argues that the magistrate judge let Mr. Trimble,

13

through his omission, waive the attorney-client privilege – a privilege that belongs to, and can only be waived by, the client. The magistrate judge was following (without citing) the analysis employed in Sandra T.E.. That Sidley Austin lawyers gave "Upjohn warnings" was evidence that they were acting as the school board's attorneys; that Mr. Trimble didn't do so was evidence that he was acting merely as an investigator, rather than as Purdue's attorney.

F

This leads to the cruces of Pudue's argument to this court: that under Sandra T.E., the privilege covers attorneys performing investigations for clients, and that the existence of the attorney-client privilege is a question of law (and so properly before this court on a Rule 72(a) objection). As to the first, this court reads Sandra T.E. differently. Sandra T.E. was very fact-specific: under those specific facts, the investigation was an essential part of the legal services and advice Sidley Austin was retained to provide to the school board. Under that set of facts, but not under all sets of facts, the attorney-client privilege can protect the attorneys' records of the interviews and eventual advice to the client. Nothing in Magistrate Judge Rodovich's decision runs afoul of that principle. The magistrate judge looked at what was available to him. There was no engagement letter in the record, nor any indication that the report to the three-trustee panel was labeled "Privileged and Confidential" or "Attorney-Client Communication". Instead, there was Vice President Rollock's letter indicating that an independent investigator

14

would be appointed, with no hint that the "independent investigator" would be an attorney owing a fiduciary duty to Purdue, and Mr. Trimble's conduct of the interview with Chancellor Wartell, which was consistent with the role of an investigator rather than the role of an attorney for Purdue.

Finally, Purdue points to Sandra T.E. for the proposition that whether the attorney-client privilege exists is a question of law. 600 F.3d at 618. The court agrees, but that principle leads Purdue to a conclusion this court can't reach. Whether the privilege applies in light of a given set of facts is a question of law that courts review *de novo*, but determination of the facts against which the legal question is to be answered is, under Rule 72(a), reviewed for clear error. Given the evidentiary materials before him, there was no clear error in Magistrate Rodovich's finding that, "The record does not reflect that Trimble was giving legal advice by conducting the investigation and report. Rather, he was conducting an internal investigation so that Purdue could determine how to respond prior to the prospect of litigation." [Doc. 36, at p.10]. Having found that Purdue wasn't seeking legal advice from Mr. Trimble, there was no clear error in the holding that the attorney-client privilege doesn't protect the communications between Mr. Trimble and Purdue.

III

For the foregoing reasons, the court GRANTS the plaintiff's motion to strike evidentiary material that wasn't before the magistrate judge [Doc. No. 42] and

OVERRULES the defendants' partial objection [Doc. No. 37] to the magistrate judge's grant of the plaintiff's motion to compel. The defendants' motion for a partial stay of Magistrate Judge Rodovich's order pending disposition of their Rule 72 objection [Doc. No. 38] is DENIED as moot.

SO ORDERED.

ENTERED:   August 28, 2014   

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court